1

2

3                                                          FILED IN THE
                                                         U.S. DISTRICT COURT
                                                         EASTERN DISTRICT OF WASHINGTON

                                                         Dec 30, 2022

4                                                          SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    VICTOR D.,[1]                          No. 2:20-cv-00289-MKD

8                    Plaintiff,             ORDER DENYING
                                            PLAINTIFF'S MOTION FOR
9         v.                                SUMMARY JUDGMENT AND
                                            GRANTING DEFENDANT'S
10   KILOLO KIJAKAZI, ACTING                MOTION FOR SUMMARY
     COMMISSIONER OF SOCIAL                 JUDGMENT
11   SECURITY,
                                            **ECF Nos. 21, 22**
12                   Defendant.

13         Before the Court are the parties' cross-motions for summary judgment.  ECF

14   Nos. 21, 22.  The Court, having reviewed the administrative record and the parties'

15   briefing, is fully informed.  For the reasons discussed below, the Court denies

16   Plaintiff's motion, ECF No. 21, and grants Defendant's motion, ECF No. 22.

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them by only their first names and the initial of their last names.  *See*

20   LCivR 5.2(c).

ORDER - 1

1

**JURISDICTION**

2        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

3

**STANDARD OF REVIEW**

4        A district court's review of a final decision of the Commissioner of Social

5    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

6    limited; the Commissioner's decision will be disturbed "only if it is not supported

7    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

8    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

9    reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

10   (quotation and citation omitted).  Stated differently, substantial evidence equates to

11   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

12   citation omitted).  In determining whether the standard has been satisfied, a

13   reviewing court must consider the entire record as a whole rather than searching

14   for supporting evidence in isolation.  *Id.*

15       In reviewing a denial of benefits, a district court may not substitute its

16   judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

17   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

18   rational interpretation, [the court] must uphold the ALJ's findings if they are

19   supported by inferences reasonably drawn from the record."  *Molina v. Astrue,*

20   F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

404.1502(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

1  step five, the burden shifts to the Commissioner to establish that 1) the claimant is

2  capable of performing other work; and 2) such work "exists in significant numbers

3  in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

4  386, 389 (9th Cir. 2012).

5  **ALJ'S FINDINGS**

6  On October 23, 2018, Plaintiff applied for Title II disability insurance

7  benefits alleging a disability onset date of April 11, 2017.[2]  Tr. 16, 69, 80, 165-66.

8  The application was denied initially and on reconsideration.  Tr. 96-102, 104-10.

9  Plaintiff appeared before an administrative law judge (ALJ) on December 5, 2019.

10  Tr. 30-68.  On April 28, 2020, the ALJ denied Plaintiff's claim.  Tr. 13-29.

11  At step one of the sequential evaluation process, the ALJ found Plaintiff,

12  who met the insured status requirements through September 30, 2023, has not

13  engaged in substantial gainful activity since April 11, 2017.  Tr. 18.  At step two,

14  the ALJ found that Plaintiff has the following severe impairments: heart disease

15  with history of myocardial infarction and stent placement, obstructive sleep apnea,

16  degenerative joint disease of the right shoulder and left knee, and obesity.  Tr. 19.

17

18  _____

19  [2] Plaintiff previously applied for benefits on June 29, 2017; the claim was denied

20  on initial application, and Plaintiff did not appeal the denial.  Tr. 71.

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> He requires a sit-stand option (defined as changing from a sitting position to a standing position, and vice versa, every thirty minutes for five minutes at [Plaintiff's] discretion, while remining at the workstation). [Plaintiff] can only occasionally (one-third of the workday) stoop, and reach overhead and push/pull with the right upper extremity. He can occasionally climb ramps and stairs, and rarely (less than 15 [percent] of the workday) crouch, kneel, or crawl, and cannot climb ladders, ropes, or scaffolds, and he must avoid all exposure to unprotected heights and use of moving or dangerous machinery.

*Id.*

At step four, the ALJ found Plaintiff is capable of performing his past relevant work as a maintenance data analyst. Tr. 22. Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as housekeeping cleaner, rental storage clerk, and office clerk. Tr. 24. Additionally, the ALJ took testimony from the vocational expert as to whether jobs could be performed with the same RFC outlined above, but with a limitation to sedentary work, and the expert stated representative occupations include document preparer, hand packager or addresser, and charge account clerk. Tr. 24. Therefore, the ALJ

ORDER - 7

1  concluded Plaintiff was not under a disability, as defined in the Social Security

2  Act, from the alleged onset date of April 11, 2017, through the date of the decision.

3  *Id.*

4      On June 16, 2020, the Appeals Council denied review of the ALJ's decision,

5  Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

6  of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

8      Plaintiff seeks judicial review of the Commissioner's final decision denying

9  him disability insurance benefits under Title II of the Social Security Act.  Plaintiff

10  raises the following issues for review:

11      1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

12      2.  Whether the ALJ properly evaluated the medical opinion evidence;

13      3.  Whether the ALJ properly evaluated Plaintiff's VA disability rating;

14      4.  Whether the ALJ conducted a proper step-three analysis; and

15      5.  Whether the ALJ conducted a proper step-four and step-five analysis.

16  ECF No. 21 at 7.

**DISCUSSION**

18  **A. Plaintiff's Symptom Claims**

19      Plaintiff faults the ALJ for failing to rely on reasons that were clear and

20  convincing in discrediting his symptom claims.  ECF No. 21 at 17-20.  An ALJ

ORDER - 8

engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security

1    cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

2    *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

3         Factors to be considered in evaluating the intensity, persistence, and limiting

4    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

5    duration, frequency, and intensity of pain or other symptoms; 3) factors that

6    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

7    side effects of any medication an individual takes or has taken to alleviate pain or

8    other symptoms; 5) treatment, other than medication, an individual receives or has

9    received for relief of pain or other symptoms; 6) any measures other than treatment

10   an individual uses or has used to relieve pain or other symptoms; and 7) any other

11   factors concerning an individual's functional limitations and restrictions due to

12   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

13   404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

14   individual's record," to "determine how symptoms limit ability to perform work-

15   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

16        The ALJ found that Plaintiff's medically determinable impairments could

17   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

18   statements concerning the intensity, persistence, and limiting effects of his

19   symptoms were not entirely consistent with the evidence.  Tr. 20.

20

ORDER - 10

1      *1.  Activities of Daily Living*

2          The ALJ found Plaintiff's symptom claims were inconsistent with his

3      activities of daily living.  Tr. 20.  The ALJ may consider a claimant's activities that

4      undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

5      2001).  If a claimant can spend a substantial part of the day engaged in pursuits

6      involving the performance of exertional or non-exertional functions, the ALJ may

7      find these activities inconsistent with the reported disabling symptoms.  *Fair v.*

8      *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

9      claimant need not vegetate in a dark room in order to be eligible for benefits, the

10     ALJ may discount a claimant's symptom claims when the claimant reports

11     participation in everyday activities indicating capacities that are transferable to a

12     work setting" or when activities "contradict claims of a totally debilitating

13     impairment."  *Molina*, 674 F.3d at 1112-13.

14         The ALJ noted that Plaintiff's "volunteer activities during much of the

15     adjudication period" were not consistent with Plaintiff's allegations of disabling

16     limitations.  Tr. 20.  Plaintiff testified that he coaches his childrens' sports teams

17     for a few hours per day for a portion of the year, which sometimes includes long-

18     distance travel.  Tr. 42, 45.  Plaintiff also reported being able to walk three and a

19     half miles, six days per week.  Tr. 20 (citing Tr. 320).  The records indicate

20     Plaintiff "walks frequently," Tr. 274, and he only gets shortness of breath after

ORDER - 11

1   walking up three or four flights of stairs, Tr. 446.  Plaintiff reported walking his

2   dog, including walks on the beach up to two to three miles long.  Tr. 301, 344.

3   Plaintiff also reported handling household tasks.  Tr. 301.  The ALJ's finding that

4   Plaintiff's activities contradict his allegations of disabling limitations is supported

5   by substantial evidence.

6       *2.  Work History*

7       The ALJ found that Plaintiff's ability to work after the alleged onset date

8   was inconsistent with his allegations.  Tr. 20.  Working with an impairment

9   supports a conclusion that the impairment is not disabling.  *Drouin v. Sullivan*, 966

10  F.2d 1255, 1258 (9th Cir. 1992); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

11  1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference

12  that impairment is not disabling).  However, short-term work, which does not

13  demonstrate the ability to sustain substantial gainful employment, may be

14  considered an unsuccessful work attempt instead of substantial gainful activity.

15  *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999); *see also*

16  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including

17  this one, have recognized that disability claimants should not be penalized for

18  attempting to lead normal lives in the face of their limitations.").

19      The ALJ noted that while Plaintiff's work generally did not amount to

20  substantial gainful activity, his ability to engage in some work during the relevant

ORDER - 12

period was inconsistent with his allegations.  Tr. 20.  Plaintiff worked part-time

through most of the adjudicative period.  Tr. 18-19.  His work rose to the level of

substantial gainful activity in the second quarter of 2019 but was not substantial

gainful activity for the remainder of the quarters he worked.  Tr. 18, 195-96.  The

records indicate Plaintiff was "[a]ctive working as a football as well as fast pitch

softball coach."  Tr. 446.  Plaintiff does not present any argument that his

substantial gainful activity was an unsuccessful work attempt.  The ALJ's finding

that Plaintiff's ability to work during the relevant period was inconsistent with his

allegations is supported by substantial evidence.

3.  *Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857;

*Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601;

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective

medical evidence is a relevant factor, along with the medical source's information

about the claimant's pain or other symptoms, in determining the severity of a

claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20

C.F.R. § 404.1529(c)(2).

The medical records indicate Plaintiff was described as "well," he denied

unusual dyspnea or fatigue, his gout and hypertension were well-controlled, and he

was tolerating his medications without any significant side effects.  Tr. 20, 301-02,

320.  Imaging of Plaintiff's knees showed no more than mild swelling, potential

distal patellar tendinosis, and no significant osteoarthrosis.  Tr. 20, 326.  Plaintiff's

cardiovascular testing and examinations were unremarkable.  Tr. 20-21, 328, 349,

425.  Plaintiff had improvement in his sleep apnea with treatment.  Tr. 21, 465.

The ALJ's finding that the objective medical evidence is inconsistent with

Plaintiff's allegations is supported by substantial evidence.  The ALJ gave clear

and convincing reasons, supported by substantial evidence, to reject Plaintiff's

symptom claims.  Plaintiff is not entitled to remand on these grounds.

**B. VA Disability Rating**

Plaintiff contends the ALJ erred in rejecting his disability rating from the

VA.  ECF No. 21 at 13-14.  For claims filed on or after March 27, 2017, decisions

made by other governmental agencies are "neither inherently valuable or

persuasive," and ALJs will not provide any analysis about how such evidence was

considered.  20 C.F.R. §§ 404.1520b(c), 404.1504. The Notice of Proposed

Rulemaking accompanying the revised regulations specifically noted the Ninth

ORDER - 14

1 Circuit's ruling in *McCarty v. Massanari*, 298 F.3d 1072 (9th Cir. 2002) and

2 indicated that the new regulations would eliminate the different approaches taken

3 by different Circuits and unify the application of the disability process across the

4 nation. Revision to Rules Regarding the Evaluation of Medical Evidence, Notice

5 of Proposed Rule Making, Fed. Reg. Vol. 81, No. 175 62565 (Sept. 9, 2016). As

6 such, the ALJ did not err in rejecting Plaintiff's VA disability rating without

7 setting forth an analysis of the rating.

8    **C. Medical Opinion Evidence**

9        Plaintiff contends the ALJ erred in rejecting the opinion of Joseph Cwik,

10 D.O. ECF No. 21 at 10-13.

11        As an initial matter, for claims filed on or after March 27, 2017, new

12 regulations apply that change the framework for how an ALJ must evaluate

13 medical opinion evidence. *Revisions to Rules Regarding the Evaluation of*

14 *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

15 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer

16 "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to*

17 *Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

18 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of

19 all medical opinions or prior administrative medical findings from medical sources.

20 20 C.F.R. § 404.1520c(a)-(b). The factors for evaluating the persuasiveness of

medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when

ORDER - 16

two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at *6.  However, the ALJ is not required to make specific findings regarding the relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent.  *Id.*

ORDER - 17

1   On December 3, 2019, Plaintiff's treating physician, Dr. Cwik, rendered an

2   opinion on Plaintiff's functioning.  Tr. 492-94.  Dr. Cwik diagnosed plaintiff with

3   coronary artery disease, obstructive sleep apnea, and hypertension.  Tr. 492.  He

4   opined Plaintiff needed to lie down or elevate his legs during the day for 20 to 40

5   minutes due to fatigue; he was limited to light level exertion; he would miss four or

6   more days per month from full-time work due to fatigue, shortness of breath, and

7   knee pain; and he would be off task more than 30 percent of the workday.  Tr. 492-

8   94.

9       The ALJ found "there is simply no support [f]or indications that the claimant

10  needed to elevate his legs, would be off-task, or that he would miss work as a

11  result of his impairments."  Tr. 22.  Consistency is one of the most important

12  factors an ALJ must consider when determining how persuasive a medical opinion

13  is.  20 C.F.R. § 404.1520c(b)(2).  The more consistent an opinion is with the

14  evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §

15  404.1520c(c)(2).  As discussed *supra*, Plaintiff's activities of daily living and

16  ability to work part-time are inconsistent with disabling limitations, and the

17  objective medical evidence does not demonstrate disabling limitations.  Further,

18  while Dr. Cwik noted Plaintiff's "high blood pressure" was a sign of his

19  hypertension, Tr. 492, the records indicate his hypertension is well-controlled, Tr.

20  320.  While Dr. Cwik stated Plaintiff would miss four or more days per month

ORDER - 18

1  from work due to fatigue, shortness of breath, and knee pain, Tr. 493, imaging

2  showed only mild knee impairment, Tr. 429, 431, and Plaintiff has denied

3  shortness of breath on multiple occasions, Tr. 318, 324, 328, 335, 340-41.  As

4  such, the ALJ reasonably found that Dr. Cwik's disabling opinion was not

5  consistent with the record.  Plaintiff is not entitled to remand on these grounds.

6  **D. Step Three**

7      Plaintiff contends the ALJ erred by failing to find Plaintiff meets or equals

8  Listing 3.02C3 or Listing 3.04F, and by not calling a medical expert.  ECF No. 21

9  at 14-17.

10      At step three, the ALJ must determine if a claimant's impairments meet or

11  equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).

12      The Listing of Impairments "describes for each of the major body systems

13  impairments [which are considered] severe enough to prevent an individual from

14  doing any gainful activity, regardless of his or her age, education or work

15  experience."  20 C.F.R. § 404.1525.  "Listed impairments are purposefully set at a

16  high level of severity because 'the listings were designed to operate as a

17  presumption of disability that makes further inquiry unnecessary.'"  *Kennedy v.*

18  *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S.

19  521, 532 (1990)).  "Listed impairments set such strict standards because they

20  automatically end the five-step inquiry, before residual functional capacity is even

ORDER - 19

considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*.  However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683.  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process

1  will provide rationale that is sufficient for a subsequent reviewer or court to

2  determine the basis for the finding about medical equivalence at step 3."  Social

3  Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27,

4  2017).

5      Here, the ALJ found that Plaintiff's impairments and combinations of

6  impairments did not meet or equal any listings, including Listings 3.02 and 3.04.

7  Tr. 19.  Listing 3.02C3 for chronic respiratory disorders is met when a claimant has

8  chronic impairment of gas exchange with oxygen saturation measured by pulse

9  oximetry less than or equal to the values in Table V.  20 C.F.R. § 404, Subpt. P,

10  App. 1, § 3.02C3.  Section 3.00H2 contains additional criteria for the pulse

11  oximetry testing, including the requirements of the report and that the patient must

12  be medically stable at the time of the test.  *Id.* at § 3.00H2.  Listing 3.04F for cystic

13  fibrosis has similar requirements for pulse oximetry testing done at rest or during

14  walking tests, with multiple readings within certain time periods.  *Id.* at §3.04F.

15      Plaintiff has not met his burden in demonstrating that his impairments meet

16  all the requirements of any listing.  While Plaintiff contends his sleep apnea should

17  be considered under the respiratory listings, he has presented no legal support for

18  this contention.  ECF No. 21 at 15-17.  The explanatory section of the breathing

19  listings indicates that sleep related breathing disorders, such as sleep apnea, are

20  evaluated based on the complications caused to other parts of the body under the

ORDER - 21

listings for the affected body systems, such as hypertension, heart failure, and disturbance in mood or cognition.  20 C.F.R. § 404, Subpt. P, App. 1, § 3.00P.

Plaintiff also has not cited to any legal support for his contention that the ALJ was required to call a medical expert.  The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The evidence in this case is not ambiguous and there was adequate evidence for the ALJ to determine that Plaintiff does not meet or equal a listing.  Plaintiff is not entitled to remand on these grounds.

**E.  Steps Four and Five**

Plaintiff argues that the ALJ erred in his step four and five determinations because the testimony of the vocational expert was premised on an incomplete hypothetical stemming from an inaccurate residual functional capacity determination.  ECF No. 21 at 20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.  *Id.*  For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims, and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC or finding Plaintiff

ORDER - 22

capable of performing work existing in the national economy.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 30, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 23